. 8503

WHITTLE v. TOMPKINS.

1. ATTORNEYS—ALIMONY.—CONTRACT in question between a married woman and an attorney employing him to adjust property differences between herself and her husband, which might lead to suit for alimony, *held* to have been made when the wife was mentally capable of making the contract, and not to be unjust or unfair.

2. PAROL EVIDENCE.—The letters relating to the contract did not fully disclose the services to be performed and parol evidence was admissible to show the terms and conditions of employment.

2. ATTORNEYS—ALIMONY—CONTRACTS.—The wife has the right to make a contract for retainer in a property proceeding against the husband, which may lead to a 'suit for alimony, and such contract is not against public policy. She has the right to contract for a fee in a suit for alimony subject to approval by the Court.

4. IBID.—When an attorney, after employment, starts to work vigorously and continues until his client directs him to stop and an amicable arrangement is reached while he is at work without notice to him, he has performed services warranting compensation at least of the retainer.

Before SPAIN, J., Richland, September, 1912.   Affirmed.

Action by Alice D. Whittle against Frank G. Tompkins. Plaintiff appeals.

*Messrs. A. H. Ninestein, C. E. Sawyer* and *W. H. Townsend,* for appellant, cite: *Contract between wife and attorney as to litigation about matters personal between husband and wife is against public policy:* 1 Paige on Con., sec. 426; 2 Id., sec. 428; 129 Col. 283; 5 S. C. 136; 4 Am. St. R. 836; 33 L. R. A. (N. S.) 1074; 14 Id. 1168; 58 L. R. A. 471; 21 N. Y. App. Div. 272; 114 Id. 257; 121 Ala. 434; 50 L. R. A. 548; 135 Mich. .673; 55 Wash. 376. *That wife needs alimony:* 1 DeS. 219. *This contract is against public policy:* 58 L. R. A. 471; 4 Am. St. R. 836; 136 S. W. 933; 135 Mich. 678; 14 L. R. A. (N. S.) 1168; 21 App. Div. N. Y. 272; 121 Ala. 434; 50 L. R. A. 548; Paige on Con. 509, 1483; 114 App. Div. N. Y. 257; 73 S. C. 1; 13 A. & E.

Ann. Cas. 209. *Parties are not in pari delicto:* 139 Mo. 427; 124 N. Y. 156; 1 A. & E. Ann. Cas. 691; 40 Am. Dec. 356. *Plaintiff seeks to recover on her legal title and not under contract:* 180 Fed. 519, 847; 23 N. J. L. 465; 189 A. S. 423; 73 S. C. 5; 14 L. R. A. (N. S.) 1170; 78 Am. Dec. 534. *Court could relieve plaintiff of contract:* 1 A. & E. Ann. Cas. 691; 2 L. R. A. (N. S.) 260; 72 S. E. 665; 21 Wall. 453. *There is presumption of undue influence:* 40 S. C. 114; 149 Fed. R. 464; 9 L. R. A. 90; 96 Pac. 866; 99 Pac. 935; 18 A. & E. Ann. Cas. 119; 11 Paige 538; 84 S. W. 720; 56 L. R. A. 879; 73 S. W. 865; 40 Barb. 521; 90 Pac. 490; 7 At. 842; 23 N. E. 241; 14 Pac. 523; 23 At. 1046; 49 N. E. 797; 31 Am. R. 23; 43 Am. R. 564; 53 Pac. 81; 58 Pac. 471; 22 App. Div. N. Y. 508; 26 Conn. 219; 135 App. Div. 772; 185 N. Y. 520; 125 Fed. 213; 102 Pa. 533; 9 Fed. 724; 12 Vt. 199; 4 Hayw. 291; 2 Dana 228; 14 Pa. St. 469; 29 Am. Dec. 249; 14 N. J. Eq. 451; 38 N. Y. 342. *Parties did not stand at arm's length:* 14 L. R. A. (N. S.) 1168; 58 L. R. A. 471; 40 S. C. 114; 149 Fed. 464; 4 DeS. 651; 9 Fed. 724; 38 N. Y. 342; 22 App. Div. 508; 125 Fed. 213.

*Messrs. Melton & Belser,* contra, cite: *Parol evidence admissible to show entire agreement:* 41 S. C. 153; 61 S. C. 169; 68 S. C. 523; 72 S. C. 368; 65 S. C. 169; 53 S. C. 483; 35 S. C. 548. *Contract is not illegal and void:* 15 Ency. 955; 9 Cyc. 520; 14 Ark. 267; 22 W. Va. 708; Stewart on Husband and Wife 463; 24 L. R. A. 629; 1 McC. 197; 10 Rich. Eq. 163; 24 S. C. 377; 51 S. C. 379; 86 S. C. 90; 80 S. C. 277; 2 Ency. 106; 14 Cyc. 752, 761, 762; 9 Rich. Eq. 535. *Plaintiff was of sound mind when contract was made:* 90 S. C. 208. *Presumption of undue influence is rebuttable:* 90 S. C. 215.

April 2, 1913. The opinion of the Court was delivered by

MR. JUSTICE FRASER.    The appellant brought this action to recover certain personal property held by the respondent under the following paper:

"State of South Carolina, Richland county.    I hereby authorize Frank G. Tompkins, as my true and lawful attorney for me and in my stead, to bring such suit for alimony and separation against my husband, J. D. Whittle, as may be proper, and he is authorized to make agreements in reference to the same subject to my approval.    For the said service I agree to pay the sum of one thousand dollars, to secure which sum I have pledged my diamond solitaire ring and diamond crescent containing twenty-one diamonds, which are to be returned to me if the said one thousand dollars is paid on or before 1 June, 1911.    In addition thereto I agree to pay fifteen per cent. of all property or money recovered up to forty thousand dollars, and twenty per cent. of all recovered if the sum or value be over forty thousand dollars.    Signed, sealed and delivered, this 11th June, 1910.    Mrs. Alice Whittle.    Witness: John B. Lee."

The appellant claimed that she was mentally incapable of contracting at the time she signed the contract, because of her weak mental and physical condition, and that the respondent, well knowing her condition, took advantage of her to procure the contract and get possession of the property.    That the respondent has never rendered to this plaintiff any service that was of value to her; That the contract is void for the reason that it is unfair, unjust, unconscionable, iniquitous and without consideration.    That the contract is against public policy and good morals, and is, therefore, illegal, null and void.

The testimony was taken out of Court and upon the testimony so taken the cause was tried before his Honor, Judge Spain, who found in favor of the respondent and dismissed the complaint.    From this judgment appellant appealed to this Court upon twenty-five exceptions, many of which raise practically the same question.

1. Logically the first question is, was the appellant mentally capable of making any contract?

The evidence fails to show that she was not capable of making a contract on the date of its execution. Dr. Gyles, who seems to have attended her just before and just after the execution of the contract, thought her "in better shape than she had been." Dr. Preston, another witness for appellant, said, "Well, I think this: I think she would not be in as good state of mind as some person who was thoroughly well. In other words, I think she could be impressed much more readily than a person who was perfectly well."

Dr. Walker thought she could be easily influenced.

Dr. Smith thought she was not capable of attending to business; but he had not attended her for months.

The testimony showed that she was a woman of considerable property and many business dealings. That she had married a man of large wealth, to whom she had conveyed all of her property just after marriage. That she was married to her present husband on September 7, 1909.

The appellant's witness, J. D. Whittle, said, "We were married on Tuesday, and on Friday the trouble commenced," and seemed to have continued until after the employment of the respondent, and the making of the contract. Again, her husband says, "There had been trouble ever since the third day after we were married, up to the 21st July, 1910." That was more than a month after the date of the contract. He said she seemed to be craving money. She wanted at least forty or fifty thousand dollars. When asked if he had done anything to "reconcile" her, he said, "I did everything a man could possible do to live with her." Whatever may be said of appellant's abnormal condition, it does not seem to have mainifested itself in weakness of will power. While one witness said some people said she was crazy, he himself did not seem to think she was more than weak nervously. The letters of appellant and

the testimony of Dr. Gyles show that she had full capacity to make a contract.

2. Was the contract unfair and unjust? The Circuit Judge held that the burden was on the appellant to show that it was unfair, and to this there is an exception. This holding can not possibly affect the result. The appellant did not put up a single witness who testified as to the unfairness of the contract. In evidence the respondent took upon himself the burden and put up reputable attorneys who said that the fee was not excessive, and the contract reasonable and just. Appellant, however, contends that the circumstances show that the contract is unjust and unreasonable. There are other circumstances that offset them. The Circuit decree fully covers them and they need not be repeated.

3. Was it error to allow parol evidence to show what services were contracted for? It was not. The circumstances showed that alimony was not recoverable at that time. The husband and wife were living together and no alimony could be recovered until they ceased to live together. It must be presumed that every one knew that in South Carolina no divorce, either absolute or qualified, could be granted by the Courts. Therefore, it became necessary to ascertain by parol what were the services contracted for. The letters showed that services, immediate and strenuous, were demanded. The letters did not fully disclose their nature and parol evidence was necessary. *Chemical Company* v. *Moore*, 61 S. C. 169, 39 S. E. 346. "The terms of that paper do not show of itself any such contract as could become the basis of a cause of action for any specified sum of money. This being so, then the cases of *Kaphan* v. *Ryan*, 16 S. C. 352; *Fulwood* v. *Blanding*, 26 S. C. 312, 2 S. E. 565; *McAteer* v. *McAteer*, 31 S. C. 313, 9 S. E. 966; *Willis* v. *Hammond*, 41 S. C. 153, 19 S. E. 310, are quite sufficient to show that the testimony was competent in order to show the entire transaction between the parties." This was parol evidence.

4. Was the contract void as against public policy? It will be noticed that the contingent fee is not before us. The respondent does not claim it. The retainer fee and the contingent fee are entirely separate and distinct. The contingent fee not being contested, the question is, can a married woman contract to pay a retainer fee in an action against her husband, even when it may eventually include a suit for alimony? It is claimed that respondent ought to have informed the appellant that the Court would allow her her counsel fee and require the husband to pay it. The right to counsel fees is not an absolute right and was a matter to be determined by the wise discretion of the Circuit Judge. It was in the discretion of the Circuit Judge to allow counsel fees and she had a perfect right to anticipate the possibility of his refusal by contracting on her own responsibility. It is said that it will encourage litigation to allow a wife to contract for counsel fees in advance. That is not the theory. Counsel fees and expenses are allowed in order that needed litigation may not be suppressed. The wife must contract in any event. The counsel fees are allowed to her and not to her attorney.

Am. & Eng. Ency. of Law, vol. II, p. 113. "In addition to the sum allowed the wife for her maintenance and support during the pendency of the suit, which alone, strictly speaking, is alimony, it is usual to allow her a sum to defray the expenses of the suit and to employ counsel, sometimes, mistakably called alimony." She must of necessity make the contract, and, if it is a reasonable and fair contract, she is bound. Appellant thinks his Honor's expression as to the right of a wife to contract, was too broad. The question is, did she have the right to make this contract? We have seen that she has the right.

5. Was any service rendered by the respondent? This Court can not say that the respondent rendered no service. He certainly seems to have started to work vigorously and

continued to work until the client directed him to discontinue. It is undisputed that an amicable adjustment, that was not arrived at for several months, was made in a comparatively short time after his efforts began, while the claim was still in his hands and without notice to him until after the settlement was made. Respondent was entitled to his fee.

Appellant reduces the questions to twelve. The foregoing covers all that legitimately arise.

The judgment of this Court is that the judgment appealed from be affirmed.

MR. CHIEF JUSTICE GARY *disqualified.*