20629

Helen S. STONE, Respondent, v. GUARANTY BANK AND TRUST COMPANY, Executor of the Estate of Eugene E. Stone, Appellant (two cases).

(242 S. E. (2d) 404)

332

*C. Weston Houck,* of *Houck, Clark & Johnson,* Florence, *for Appellant,*

*Ronald L. Motley,* of Barnwell, *for Respondent,*

March 6, 1978.

GREGORY, Justice:

The executor of Mr. Stone's estate appeals from two orders of the lower court: The first granting Mrs. Stone a divorce, alimony and attorneys' fees, and holding Mr. Stone in contempt of court; and the second also holding Mr. Stone in contempt of court and awarding Mrs. Stone additional attorneys' fees. We hold the divorce decree was based on evidence that should have been excluded and reverse the lower court's order granting Mrs. Stone a divorce and alimony. We remand the issues of attorneys' fees for further consideration. Mr. Stone's death has rendered his appeal from the two contempt orders moot.

Mr. and Mrs. Stone were married on September 4, 1972 and no children were born to this union. Both parties have adult children from previous marriages. In March 1975, Mrs. Stone filed suit against her husband seeking a divorce *a vinculo matrimonii* on the ground of adultery. By way of counterclaim Mr. Stone alleged that Mrs. Stone was also guilty of adultery and prayed for a divorce.

The Honorable Dan F. Laney, Jr., issued his order on April 17, 1975, granting Mrs. Stone certain relief *pendente lite* and referring the matter to the Standing Master for Lee County.

Under the terms of the *pendente lite* order Mrs. Stone was granted the temporary use of Mr. Stone's house and its furnishings. Judge Laney issued a supplemental order in October 1975, restraining Mr. Stone and his son from disposing

of certain furnishings they had removed from the house in violation of the *pendente lite* order.

Testimony was heard and evidence received by the Master who issued his report on August 4, 1976. The Master found that Mr. Stone was guilty of adultery and that Mrs. Stone was guilty of adultery but that Mr. Stone had condoned her acts. He recommended that Mrs. Stone be granted a divorce and $60,000 alimony payable in five equal installments; that Mr. Stone's prayer for a divorce be denied; that Mr. Stone show cause before the Circuit Court why he should not be held in contempt of the April 17, 1975, order; and that the Circuit Court hear and determine Mrs. Stone's request for attorneys' fees. Both parties filed exceptions to the Master's Report.

The Circuit Court confirmed the Master's Report by its order dated January 17, 1977, with the following exceptions: that Mr. Stone failed to establish adultery on the part of Mrs. Stone; that Mrs. Stone be awarded lump sum alimony in the amount of $75,000; that Mrs. Stone have the use of Mr. Stone's house for a period of sixty days; that Mrs. Stone be declared the owner of certain household furnishings; that Mr. Stone be held in contempt of the court's order dated April 17, 1975; and that Mr. Stone pay $25,000 as attorneys' fees to Mrs. Stone's attorneys.

Subsequent to the divorce decree, Mr. Stone was found in willful contempt of court on May 25, 1977, for failing to comply with the April 1975 and January 1977 orders. In addition to the penalty imposed for the contempt citation, Mr. Stone was required to pay $500 as attorneys' fees to Mrs. Stone's attorneys for their prosecution of the rule to show cause.

Mr. Stone appealed from both the January 1977 divorce decree and the May 1977 contempt order.

> On December 15, 1977, Mr. Stone died after a long illness and the executor of his estate has been substituted as the party appellant. Mr. Stone's death

abates his counterclaim for a divorce and renders the contempt proceedings against him moot, but the appeal may continue in favor of his estate to the extent the lower court's order affects the property rights of the parties. The appeal continues "for the ascertainment of whether [Mr. Stone's] property has been rightfully diverted from its appropriate channel of devolution." Annot., 148 A. L. R. 1111 (1944).

Appellant contends the lower court erred by admitting into evidence the discovery deposition of Howard W. Paschal, Jr., a private investigator employed by Mrs. Stone. Rule 87 Section D(3) of the Circuit Court Rules provides when a deposition may be introduced into evidence at trial:

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the Court finds: (1) that the witness is dead, or (b) that the witness is a greater distance than one hundred miles from the place of trial or hearing or is out of the State of South Carolina, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, sickness, infirmity or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

The following statement of Mrs. Stone's attorney, Walter Brooks, is the only evidence in the record of Mr. Paschal's inability to testify:

The Court: Witness is at a greater distance of 100 miles from the place at this time?

Mr. Brooks: That's our understanding, he's in California.

The Court: . . . The witness is out of state. It seems it would be admissible Mr. Houck.

Counsel for respondent offered no evidence that any attempt had been made to contact Mr. Paschal concerning his availability to testify. No subpoena was issued to secure Mr. Paschal's attendance. Respondent did not indicate how long Mr. Paschal would be unavailable, and no foundation was laid for counsel's conclusion that Mr. Paschal was in California. The bare statement by respondent's counsel, without explanation, that he understood the witness to be in California is not a sufficient showing under Rule 87 Section D(3), and the lower court erred by admitting the deposition into evidence.

With the exclusion of Mr. Paschal's deposition from the record, there remains no evidence to support the lower court's finding that Mr. Stone was guilty of adultery within the meaning of our divorce statute. Accordingly, we reverse the order of the lower court granting Mrs. Stone a divorce, alimony and certain household furnishings on that ground.

The lower court awarded Mrs. Stone's attorneys $25,000 as a reasonable fee in the divorce action and $500 as a reasonable fee in the May 1977 contempt proceeding. Among the several factors to be weighed by the lower court in setting a reasonable attorneys' fee in a divorce action is the beneficial result accomplished. *Wood v. Wood,* S. C., 239 S. E. (2d) 315 (1977). In view of our determination that Mrs. Stone is entitled to neither a divorce nor alimony, we remand the issue of attorneys' fees to the lower court for further consideration.

Mr. Stone's appeal from the orders of the lower court holding him in contempt of court are rendered moot by his death and will not be considered by this Court.

Reversed and remanded.

LEWIS, C. J., LITTLEJOHN and RHODES, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.